T. Tommy Vonski was convicted of violations of the National Prohibition Act, and he moves for a new trial. Motion denied.

George W. Coles, U. S. Atty., of Philadelphia, Pa.

M. Russell Turk, of Chester, Pa., for defendant.

THOMPSON, District Judge. The indictment charged the defendant in three counts with the sale of whisky and beer, with the possession with intent to sell of 455 gallons of whisky, and with maintaining a common nuisance at premises 2601 and 2603 West Second street, Chester, Pa., where it is charged, whisky and beer were sold, kept, and bartered in violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). Prior to trial, a motion was made to quash a search warrant under which seizure had been made. The motion was not pressed until the case was called for trial by jury. The defendant's attorney at that time asked to be heard on the motion to quash. The motion was formally overruled, without prejudice to the right of the defendant to object to the introduction of evidence procured through the search warrant at the trial.

The testimony at the trial tended to show the following facts: The premises 2601 and 2603 West Second street were adjoining houses, not adjoining other buildings. The premises 2601 was occupied by the defendant and his family as a dwelling, and was used in part as a cigar store. The adjoining property, 2603, was occupied as a dwelling by another family. On November 11, 1926, at about 5 o'clock p. m., Prohibition Agents Henchel and Ward entered the cigar store of the defendant and purchased from him two drinks of beer and two drinks of whisky. The defendant, before serving the first drink of whisky, went into a back room and returned with the whisky. The agents then ordered another drink of whisky. The defendant left the store, and the agents then went around the building to see where he was getting his supply. They saw him crawl through a cellar window of premises 2603. Upon his return, they were supplied with whisky. A search warrant was sworn out, and on November 15 the agents returned and made a search of premises 2601, and found liquor and utensils for serving liquor on those premises. They then went through the cellar window of premises 2603, and found over 100 jugs of liquor and parts of a still in the cellar. This cellar extended under the rear of both houses. The defendant did not take the stand, but called witnesses who testified that on November 11 he was not present at 5 o'clock, but from 4 to 6 was visiting at a farm several miles away from his home.

The affidavit upon which the search warrant was based was sufficient to establish probable cause for the commissioner to issue the search warrant. The main objection to it is the contention that the cellar where a large quantity of liquor was stored was not used as part of the premises 2601, and the premises 2603 was used exclusively as a dwelling house, and hence was not subject to search, unless the sale or manufacture of liquor was conducted thereon. The question of the use of the cellar in connection with premises 2601 was left to the jury, with instructions that, if they found from the evidence that the cellar extended under both houses and was used by the defendant, the occupant of premises 2601, as part of the premises in which he conducted his cigar store, for the storage of liquor, then the search of the cellar, even though there was no direct communication between it and premises 2601, was lawful, and the evidence found under the search warrant might be considered by them in determining the guilt or innocence of the defendant. The jury returned a verdict of guilty upon all three counts of the indictment.

There was no evidence to contradict the testimony of the agents that the cellar searched extended across the rear end of both dwelling houses. Whether it did or did not, the jury might well find that the part of the cellar beneath premises 2603 was used as part of premises 2601, although, in order to obtain entrance to the cellar, the only means of access was through premises 2603. The search was lawful, therefore, based, as it was, upon a search warrant lawfully issued.

Being of the opinion that the evidence was lawfully obtained, the verdict must be sustained. The motion for a new trial is denied.

---

**In re ZUKY.**

(District Court, E. D. New York. August 21, 1926.)

**Bankruptcy ⬤⟃127—Trustee must be elected by creditors.**

A trustee must be elected by creditors, and if a person elected is not approved by the referee, another election should be held.

In Bankruptcy. In the matter of Paul A. Zuky, bankrupt. On motion to modify record. Denied.

Remington & Meek, of New York City, for creditors.

Benjamin H. Wicksel, of New York City, and Adrian Hegeman, of Brooklyn, N. Y., for trustee.

CAMPBELL, District Judge. The creditors whose claims were in the majority in number and amount had the right to elect the trustee. Section 44, Bankruptcy Act (Comp. St. § 9628).

So far as I can determine, they nominated two gentlemen in succession, Mr. Taylor and Mr. O'Connor, to both of whom objections were urged, and the referee indicated that he would not approve them, and without intending any reflection on the gentlemen personally, both of whom appear to be men of high character, I agree with the referee that no assignee or person closely associated in business with an assignee should be appointed trustee.

No formal election seems to have been held. The referee should have held a formal election, at which the votes of a majority in number and amount of the creditors should have been counted, and, if those votes had been cast for a candidate whom the referee was unwilling for any reason to approve, such disapproval should have been regularly made.

The right of the creditors to elect the trustee was given by statute, and should not have been denied, even although it be contended that an election was had when Mr. Taylor was nominated (with which I do not agree), but surely no election was held after Mr. O'Connor was nominated, but simply an approval of the objection of the representative of the minority to Mr. O'Connor was considered, and the referee stated his position before any election was held.

The majority should have been given another chance, even if it be held that an election was held after Mr. Taylor was nominated. In re Van De Mark (D. C.) 175 F. 287; In re Margolies (D. C.) 191 F. 369; In re Hare (D. C.) 119 F. 246; In re Lewensohn (D. C.) 98 F. 576; In re Mackellar (D. C.) 116 F. 547; In re Mangan (D. C.) 133 F. 1000; In re Jacobs & Roth (D. C.) 154 F. 988.

I cannot correct the record of proceedings as requested, nor does it make any difference if the nominations were closed.

The motion to modify the record is denied. The order of the referee appointing Mr. Hegeman as trustee is reversed, and he is directed to hold an election of a trustee on notice to the creditors.

## In re JOHNSON.

(District Court, W. D. Arkansas, Texarkana Division. July 17, 1926.)

No. 788.

1. **Bankruptcy ⊜═288(10)—Bank held not an adverse claimant in possession with respect to deposit.**

Bankrupt, after a fire loss, assigned his insurance policy as security to a creditor bank, and he and the bank brought suit thereon. Other creditors commenced suits, and garnished the bank and insurance company. The attorney for bankrupt and the bank, after obtaining an agreement by the bank to accept 75 per cent. of its claim and permit the remainder of the proceeds to be divided among the other creditors, effected a settlement with the company and deposited the money in the bank to his credit. The bank, with knowledge that bankrupt had filed a petition in bankruptcy, charged against the attorney's account the entire amount of its claim and withheld the same. *Held,* that it held the money, subject to the agreement, and that its possession, except as to the 75 per cent. to which it was entitled, was not that of an adverse claimant, but was subject to summary order of the bankruptcy court.

2. **Bankruptcy ⊜═288(6)—Possession acquired by third party with knowledge of bankruptcy proceedings is not that of adverse claimant.**

Any person acquiring possession of property of bankrupt after filing of the petition, with notice of it, may be. directed to surrender the property by summary order of the bankruptcy court.

In Bankruptcy. In the matter of Oscar Johnson, bankrupt. On petition of the Bank of Lockesburg for review of order of referee. Modified and affirmed.

James D. Head, of Texarkana, Ark., for trustee.

James D. Shaver, of Texarkana, Ark., for Bank of Lockesburg.

YOUMANS, District Judge. The following facts appear from the certificate of the referee; the facts found by the referee being sustained by the testimony:

(1) The bankrupt, Oscar Johnson, on and prior to December 9, 1924, was in the mercantile business at Lockesburg, Ark

(2) On December 9, 1924, his stock of merchandise was destroyed by fire.

(3) At that time he was indebted to the Bank of Lockesburg and also to a number of other creditors.

(4) On January 7, 1925, Johnson assigned to the Bank of Lockesburg an insurance policy for $8,000 on the stock of goods so destroyed.

(5) The insurance company denied liability on the policy, on the ground that Johnson had not complied with one of the condi-